**The STATE of Ohio, Appellee,**

**v.**

**LAMAR, Appellant.**

[Cite as *State v. Lamar* (1993), 86 Ohio App.3d 731.]

Court of Appeals of Ohio,
Van Wert County.

No. 15–92–9.

Decided March 16, 1993.

*Charles Kennedy III,* Van Wert County Prosecuting Attorney, for appellee.
*James C. King,* for appellant.

THOMAS F. BRYANT, Judge.

This is an appeal by Ralph C. Lamar from the judgment of conviction of violation of R.C. 2925.03(A)(6), aggravated trafficking in cocaine, and the sentence entered by the Court of Common Pleas of Van Wert County upon his plea of no contest to the single count of the indictment charging him with that offense.

An Ohio State Highway Patrol trooper observed a red automobile exceeding the posted speed limit and signalled its driver to stop beside the highway. Stopping behind the red automobile, the trooper left his marked cruiser and when he reached the passenger side of the automobile, the passenger opened the window. In his testimony at the hearing on the motion to suppress, the trooper described the ensuing events and circumstances:

"A. And I asked for driver's license and registration. I told them they were stopped for speeding. Mr. Lamar, the driver, produced a valid Ohio driver's license at that time but he did not produce a registration. I asked him who owned the car and he said that his wife owned it. I asked him where the registration was. He started looking through his wallet and in his coat pockets and did not find it. He seemed to be a little bit nervous at that time. I asked him if the registration was possibly in the glove box and he said, yes, that it was in the glove box. But he wouldn't—he didn't open the glove box. He seemed reluctant to. At that time I asked him if he would get it out of the glove box. So he reached over and in a very quick manner he opened the glove box, reached in and retrieved the registration and slammed it back shut. Now prior to that I had asked him if there was—if he had a gun in the glove box, because of the reluctance that they showed, and he said that there wasn't a gun in there. But when he opened the glove box, I got down to a position where I could see the entire glove box when he opened it. I wanted to make sure there weren't any weapons in there. When he opened it, in the right corner of the glove box, I could see a package about the size of a baseball, and it was wrapped up in duct tape. I immediately, you know, based on my experience with working narcotics, immediately recognized that as being possibly a package of narcotics."

After describing his experience and knowledge gained as a policeman working narcotics, the trooper continued:

"A.   At that point, [another trooper],[1] of the Van Wert post, had pulled in behind my car.   It's common practice of ours, you know, if we're in the area we will back up another Trooper; pull in and make sure everything is all right.   I told [the trooper] what I observed.   We got both people out of the car, patted them down for weapons.   Neither subject had a weapon.   At that point I went back to the car and I retrieved that duct-taped package.   [Footnote added.]

"  *   *   *

"A.   From the glove box.

"  *   *   *

"A.   I smelled it and it smelled of coffee grounds.   And in my training—I'm also a drug dog handler for the Highway Patrol.   And as part of my training, when I went through my three weeks of training for the drug dog, we had drug identification classes, drug packaging classes; we also learned that drug traffickers will use coffee grounds to disguise or to mask the odor of drugs so a drug dog cannot detect it.   And when I smelled the package I smelled coffee grounds or coffee.   So that was another tip to me that that package contained some type of narcotic.

"*   *   *

"A.   Okay.   At that point I asked both suspects, I asked each of them, what it was and who it belonged to.   And both suspects denied knowing what the package contained or denied having any knowledge of the package or—they disclaimed the package.

"  *   *   *

"A.   At that point I opened up the package and when I opened it up there was a zip lock bag and it contained a lot of coffee grounds and inside that zip lock bag, down in the coffee grounds, was a smaller package, also wrapped in duct tape. At that point I opened up the second package and found a good size chunk of what appeared to be cocaine.   It was still in a brick form, like it had just been chopped off a kilogram of cocaine.   It appeared that it hadn't been cut yet.

"  *   *   *

"A.   Okay, when I found that, I made [the other trooper] aware of what was in the package.   We secured both of the suspects in handcuffs and at that time [a

---

1.   The full names of the officers printed in the official transcript have been replaced by the author's general description as an "officer" or "trooper," in the order of their appearance at the scene of the appellant's arrest.

third trooper] she came. She was requested. She came and [a fourth trooper] also showed up at the scene. [The second trooper] advised both of the suspects of their rights in the presence of [the third trooper]. I did not hear that. I was up doing a search of the car."

Following his indictment, arraignment, and plea of not guilty, Lamar moved for an order suppressing for use as evidence against him both the property seized by Stockman and the statements made by Lamar after his arrest. After hearing, the trial court denied the motion to suppress evidence.

In its written opinion denying Lamar's motion to suppress, the trial court identified the issues before it, made findings and stated its conclusions as follow in relevant part[2]:

"It is conceded herein that the initial stop of the vehicle containing the defendant was lawful and not objectionable from a fourth amendment angle. The argument by the defendant is that the officers had no probable cause to reopen the glove box of the vehicle after the defendant had exited the vehicle and no probable cause to open the 'duct tape package' found therein.

" * * *

"In this case, the trooper's uncontroverted and essentially unquestioned testimony is that the defendant, Lamar, was acting suspiciously and furtively in trying to conceal the contents of the glove box from the trooper's view. When Lamar, after a lawful traffic stop for speeding, did retrieve the automobile's registration from the glove box, the trooper observed a package wrapped in duct tape. The size, shape and method of packaging together with Lamar's actions gave the trooper probable cause to believe that the package in the glove box contained controlled substances. After retrieving the package from the glove box, Trooper Stockman smelled the package, smelling coffee, which was a further indication that the package contained controlled substances. At this time trooper Stockman seized the package and opened it, finding the cocaine which is the basis of this charge.

" * * *

"Therefore, under the rationale of the Smith case approving a 'Terry' type search of the vehicle, or under the rationale of the Belton case, whenever a motorist is stopped for an offense under which the code permits an arrest, the

---

2. The court's written opinion recites as authorities for its decision *New York v. Belton* (1981) 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768, and *State v. Smith* (1978), 56 Ohio St.2d 405, 10 O.O.3d 515, 384 N.E.2d 280, finding both cases on their facts to be indistinguishable from the case at bar.

police may search the interior compartment of an automobile or any container in that compartment which arouses his curiosity, without first obtaining a warrant."

Lamar then changed his plea of not guilty to a plea of no contest upon which plea he was found to be guilty. Pursuant to Crim.R. 12(H), Lamar has challenged the trial court's ruling denying his motion to suppress evidence, by appealing from the judgment by which he was convicted and sentenced.

In his three assignments of error, Lamar asserts that he was initially stopped upon pretext to afford opportunity for search of his vehicle, that the officer had no probable cause for making the warrantless search by which the evidence of his offense was discovered and seized, and that search was performed neither with his consent nor incident to a lawful arrest.

We find no merit to Lamar's complaint that the initial traffic stop was a pretext to detain him and search for contraband for the possession of which he might thereafter be arrested.

At hearing on the motion to suppress, the arresting trooper testified that he was alerted by a radio message advising that a red car was travelling toward his patrol position at a speed exceeding the posted limit. He testified that although he noticed that both the driver and passenger of the red car were young black men, he stopped the car only because he verified that it was travelling sixty miles per hour in an area posted for fifty-five miles per hour maximum speed. Lamar does not deny that he was driving at speed exceeding the posted limit. There is no additional evidence in the record from which, when added to the foregoing, there may be inferred an unlawful pretext to stop and search Lamar's automobile.

The state concedes that the arresting officer took the duct-tape wrapped package from the closed glove box of Lamar's automobile without a warrant or consent to search, and that Lamar and his passenger were arrested only after that package and its smaller inner package were opened by the officer and the substance suspected to be cocaine was discovered. Lamar and his passenger were arrested subsequently only for violation of R.C. 2925.03(A)(6), aggravated trafficking in cocaine.

The trial court considered the facts of *State v. Smith* (1978), 56 Ohio St.2d 405, 10 O.O.3d 515, 384 N.E.2d 280, to be analogous and thus precedent for approving the officer's search of appellant's automobile after it had been stopped for speeding.

In *State v. Smith,* a police officer stopped a motorist for a traffic violation. As the police officer walked to the stopped vehicle, the motorist opened the automobile door and attempted to get out while obviously trying to push something under the driver's seat. The officer, seeing the furtive action from six feet away,

ordered the motorist to leave the car, stand beside it and place his hands on the automobile top where he could be observed while the officer crouched down to see what had been pushed under the seat. The officer upon seeing a pistol barrel protruding from under the driver's seat, discovered and seized a fully loaded .357 Magnum Colt Trooper Pistol with six-inch barrel. As a result of that discovery, the driver was arrested for and convicted upon his plea of no contest to a charge of carrying a concealed weapon contrary to statute. In reviewing denial of the driver's motion to suppress, the Ohio Supreme Court in deciding the reasonableness and hence lawfulness of the search and seizure described, held:

"Where a police officer stops and approaches a motor vehicle at night for a traffic violation and sees the driver, while exiting the car, furtively conceal something under the front seat, a limited search of that area is reasonable for the purpose of the officer's protection. (*Terry v. Ohio*, 392 U.S. 1 [88 S.Ct. 1868, 20 L.Ed.2d 889]; *Adams v. Williams*, 407 U.S. 143 [92 S.Ct. 1921, 32 L.Ed.2d 612]; *Chimel v. California*, 395 U.S. 752 [89 S.Ct. 2034, 23 L.Ed.2d 685], controlling.)" *State v. Smith* (1978), 56 Ohio St.2d 405, 10 O.O.3d 515, 384 N.E.2d 280, syllabus.

*State v. Smith* thus confirms that an officer's reasonable belief that a motorist is armed and imminently dangerous to the officer's safety permits the limited search or frisk approved by *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. We believe that principle is inapplicable to the circumstances under review.

Having determined that the trial court erred in its conclusion that the law enforcement interest in the circumstances was great enough to justify a search based on less than probable cause, as for a *Terry* frisk, we test those circumstances to determine if they fall within another exception to the warrant requirement of the Ohio and federal Constitutions.

The appellee claims the search here in question falls within the automobile exception to the warrant requirement of the Fourth Amendment to the United States Constitution, citing *Texas v. Brown* (1983), 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502, and *New York v. Belton* (1981), 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768, upon which latter case the trial court also relied.

The automobile exception to the warrant requirement approved in *New York v. Belton* is based on the concept of a search incident to arrest of the occupants of the automobile contemporaneously or subsequently searched.

Lamar was stopped for exceeding the posted speed limit, a minor misdemeanor traffic offense for which offense alone he was not subject to arrest, and indeed he had a substantive right not to be arrested for that offense, for the record reveals no fact constituting one of the statutory exceptions permitting his arrest according to the provisions of R.C. 2935.26. See *State v. Slatter* (1981), 66

Ohio St.2d 452, 458, 20 O.O.3d 383, 387, 423 N.E.2d 100, 104. Thus, the trial court incorrectly applied the rule, if indeed it correctly interpreted the rationale of *Belton* to be that "whenever a motorist is stopped for an offense which under the code permits an arrest, the police may search the interior compartment of an automobile or any container in that compartment which arouses his curiosity, without first obtaining a warrant."

In actuality, Lamar's warrantless arrest, if considered to be grounded on probable cause, is supported only by evidence revealed by the prior warrantless search in question. In *Smith v. Ohio* (1990), 494 U.S. 541, 110 S.Ct. 1288, 108 L.Ed.2d 464, the United States Supreme Court held that a warrantless search that provides probable cause for an arrest cannot be justified as an incident of that arrest and that the arrest may not be founded on probable cause supplied by the search. Upon the facts of this case, that precedent precludes a finding of search incident to Lamar's arrest.

In *Texas v. Brown, supra,* cited by appellee, the Supreme Court held circumstances to fall within an exception to the warrant requirement where a police officer had probable cause to believe contraband was contained in a package in his "plain view" inside an automobile he had lawfully stopped. In *Brown,* the officer observed the driver take from his trousers pocket and drop from his hand to the automobile seat a deflated balloon knotted near the tip and appearing to contain some substance. The officer, then shifting position, also observed in the open glove compartment several plastic vials, an open bag of party balloons, and quantities of loose white powder. After the driver told the officer he had no operator's license, the officer told the driver to get out of the vehicle, and when the latter had done so, upon observing that the balloon on the seat seemed to contain a sort of powdery substance, the officer removed and examined that balloon.

The divided court agreed only that no warrant was needed for seizure of the balloon, since "the incriminating nature of the item was 'immediately apparent' " because of the officer's knowledge and experience concerning use of balloons to package narcotics coupled with his plain view of the other items in the glove compartment suggesting possession of illicit substances. Thus, the "plain view doctrine," while an exception to the warrant requirement and applicable to police stops for traffic violations, like the exception for searches "incident to arrest," does not dispense with the necessity for the officer's having probable cause for any seizure of property and search made.

While *Texas v. Brown* left unresolved the necessity for probable cause to seize and search that which is found in plain view, the United States Supreme Court, in *Arizona v. Hicks* (1987), 480 U.S. 321, 326–328, 107 S.Ct. 1149, 1153–1154, 94 L.Ed.2d 347, 355–356, confirmed:

"We now hold that probable cause is required. To say otherwise would be to cut the 'plain view' doctrine loose from its theoretical and practical moorings. The theory of the doctrine consists of extending to nonpublic places such as the home, where searches and seizures without a warrant are presumptively unreasonable, the police's longstanding authority to make warrantless seizures in public places of such objects as weapons and contraband. See *Payton v. New York,* supra [445 U.S. 573], at 586–587, 63 L.Ed.2d 639 [at 650–651], 100 S.Ct. 1371 [at 1380–1381]. And the practical justification for that extension is the desirability of sparing police, whose viewing of the object in the course of a lawful search is as legitimate as it would have been in a public place, the inconvenience and the risk—to themselves or to preservation of the evidence—of going to obtain a warrant. See *Coolidge v. New Hampshire,* supra [403 U.S. 443], at 468, 29 L.Ed.2d 564 [at 584], 91 S.Ct. 2022 [at 2039] (plurality opinion). Dispensing with the need for a warrant is worlds apart from permitting a lesser standard of *cause* for the seizure than a warrant would require, i.e., the standard of probable cause. No reason is apparent why an object should routinely be seizable on lesser grounds, during an unrelated search and seizure, than would have been needed to obtain a warrant for that same object if it had been known to be on the premises.

"We do not say, of course, that a seizure can never be justified on less than probable cause. We have held that it can—where, for example, the seizure is minimally intrusive and operational necessities render it the only practicable means of detecting certain types of crime. See, e.g., *United States v. Cortez,* 449 U.S. 411, 66 L.Ed.2d 621, 101 S.Ct. 690 (1981) (investigative detention of vehicle suspected to be transporting illegal aliens); *United States v. Brignoni–Ponce,* 422 U.S. 873, 45 L.Ed.2d 607, 95 S.Ct. 2574 (1975) (same); *United States v. Place,* 462 U.S. 696, 709, and n. 9, 77 L.Ed.2d 110 [122, and n. 9], 103 S.Ct. 2637 [2646, and n. 9] (1983) (dictum) (seizure of suspected drug dealer's luggage at airport to permit exposure to specially trained dog). No special operational necessities are relied on here, however—but rather the mere fact that the items in question came lawfully within the officer's plain view. That alone cannot supplant the requirement of probable cause.

"The same considerations preclude us from holding that, even though probable cause would have been necessary for a *seizure,* the *search* of objects in plain view that occurred here could be sustained on lesser grounds.  \* \* \*  In short, whether legal authority to move the equipment could be found only as an inevitable concomitant of the authority to seize it, or also as a consequence of some independent power to search objects in plain view, probable cause to believe the equipment was stolen was required." (Emphasis *sic.*)

■ Police, in a search extending only to a specific container within an automobile, may search the container without a warrant where they have

probable cause to believe that it holds contraband or evidence. *California v. Acevedo* (1991), 500 U.S. ——, 111 S.Ct. 1982, 114 L.Ed.2d 619.

■ Thus, in the circumstances, we must address the issue of whether the officer arresting Lamar had probable cause to believe the content of the package he seized from Lamar's glove compartment was contraband or evidence of a crime. The test is one of objective reasonableness of the officer's belief in the circumstances, drawing common-sense conclusions about human behavior, that there was a fair probability that the package to be seized contained contraband or that a felony had been committed or was being committed by Lamar and that there was a fair probability that the package in question contained evidence of that felony. Cf. *Illinois v. Gates* (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527; *Texas v. Brown, supra.*

The investigating officer, having ascertained that no weapon was concealed in the glove compartment, ordered the automobile occupants to leave the vehicle, then searched the glove compartment and based upon his suspicion that it might contain narcotics, seized the object or package he had identified earlier as being neither a weapon nor obviously contraband. Although the trial court's opinion refers to the importance of noting "that the trooper had more than a mere suspicion that criminal action was afoot," that entry identifies no specific acts or information shown by the record to which our review is confined which might confirm that the officer possessed more than a generalized suspicion of appellant's possible wrongdoing, notwithstanding the trooper's training and experience.

■ The reluctance and furtiveness ascribed to appellant by the officer were not said to threaten the officer's safety. One's suspiciously furtive behavior, even while associating with known felons, has been held insufficient to satisfy the probable cause requirement for arrest and search. *State v. Hill* (1977), 52 Ohio App.2d 393, 6 O.O.3d 436, 370 N.E.2d 775.

■ Duct tape has become the universal packaging and repair material replacing the baling wire and electrician's tape of earlier days, so that baseball-sized objects wrapped in that substance are not peculiar to the packaging or transportation of illicit drugs or other unlawful pursuits.

While one of the concurring opinions in *Texas v. Brown* may be read to extend the plain view doctrine to packages whose content is concealed, nevertheless, seizure of such a package depends on probable cause inferable from other facts leading to reasonable belief that the content is contraband or evidence of crime subject to seizure, such as in *Brown,* where the presence at the scene of other evidence in plain view indicates the suspect's probable possession and packaging of illicit drugs in the manner of the package to be seized. Nothing of the sort is revealed by the record before us.

The trial court apparently believed erroneously that the parcel taken from Lamar's car was not seized by the officer until after he had taken it from the glove compartment, smelled it and detected its odor of coffee grounds. However, because Lamar was not in custody and his automobile had not been impounded, the odor of the tape-wrapped package disclosing its character as evidence was not discovered in the normal course of the officer's removing it and handling it during inventory. Again we note, probable cause to search may not be founded upon the fruits of the search. *Arizona v. Hicks* (1987), 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347. The record discloses no evidence that the focus of the officer's search for and of the tape-wrapped package was based on any prior specific information concerning the expectation the package would be in Lamar's car or that it contained contraband. See *State v. Smith; California v. Acevedo.*

■ We do not believe that probable cause exists for warrantless seizure and search of a package wrapped in a common wrapping material sometimes used to wrap packages of illicit drugs, merely because it is so wrapped, in the absence of other qualifying information or circumstances disclosing the probable illicit nature of the package in question. Nothing in the record discloses the circumstances of Lamar's appearance or conduct to fit some pattern or profile of illicit drug possession. Indeed, in *United States v. Pope* (C.A.6, 1977), 561 F.2d 663, the court held that one's merely fulfilling the profile of a drug courier, standing alone, does not give probable cause for arrest and search.

Therefore, the trial court erred to appellant's prejudice in overruling appellant's timely motion to suppress evidence for want of probable cause for seizure and search of appellant's property and for his arrest, for which reason the assignments of error are well taken.

Accordingly, the judgment of the Court of Common Pleas of Van Wert County is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

*Judgment reversed*
*and cause remanded.*

EVANS, P.J., and HADLEY, J., concur.