OPINION
{¶ 1} Defendant-appellant Juan Martinez ("Martinez") brings this appeal from the judgment of the Court of Common Pleas of Seneca County.
 {¶ 2} On April 10, 2003, Martinez was stopped while driving a white van. Martinez was stopped by a Hancock County Sheriff's Deputy at the request of Kip Lewton ("Lewton"), a DEA agent from Toledo. No reason for the stop was given. Immediately after the van was stopped, officers who had been following the vehicle in an unmarked vehicle surrounded the van. Lewton seized Martinez's cell phone and asked Martinez his identity. Martinez was asked to exit the van and consent to a search of the van, which he did. Lewton then began scrolling through the recent calls on the cell phone while other officers searched the van. No request for permission to search the contents of the cell phone was made and no authorization was given. Martinez then walked back with the deputy who checked his license number. Dispatch returned information that Martinez was driving while under an administrative license suspension and Martinez was arrested for this violation. Small amounts of marijuana and marijuana paraphernalia were found in the van.
 {¶ 3} Subsequent to the stop of the vehicle, Lewton was notified that a warrant for the house which the DEA had been watching had been obtained. The request for the warrant had been made prior to the stop and no information gathered from the stop was used to obtain the warrant. Lewton then proceeded to inform Martinez that a warrant to search his home had been obtained and questioned Martinez concerning where they might find drugs in the house. Martinez told Lewton where to find the drugs, Lewton relayed this information to the officers who had arrived at the residence, and the police located marijuana and cocaine in the home. Martinez was eventually charged with possession of cocaine and two counts of possession of marijuana.[1]
 {¶ 4} On July 24, 2003, and October 30, 2003, a suppression hearing was held to determine if 1) the search warrant was adequately supported, and 2) whether the police had reasonable suspicion of criminal activity to stop Martinez's vehicle. At the conclusion of the hearing, the trial court denied the motion to suppress the evidence and testimony. On August 16, 2004, the jury trial began. Statements made by Martinez during the stop were used at trial to directly connect Martinez to the drugs in the residence. The jury returned verdicts of guilty on all charges on August 18, 2004. On October 18, 2004, a sentencing hearing was held. Martinez was sentenced to seven years in prison for possession of cocaine, two years in prison for possession of marijuana, seven years in prison for the second count of possession of marijuana. The trial court ordered that the third and second counts be served concurrently, but consecutive to the first count for a total sentence of fifteen years in prison. Martinez appeals from this judgment and raises the following assignments of error.
The trial court erred in not finding the search warrant to beconstitutionally defective because the reliability of theinformant and the probable cause to search were not establishedwithin the four corners of the affidavit. It also erred in notgranting suppression of the warrantless searches of Martinez'scell phone and car, and in suppressing statements he made afterarrest.
 [Martinez's] sentence is violative of the Sixth Amendmentbecause the sentencing judge improperly made findings of fact.Alternatively, the sentence is not supported by clear andconvincing evidence in the record and is otherwise contrary tolaw.
 [The State] engaged in misconduct during closing arguments byadvocating constructive possession as a theory by which Martinezcould be found guilty.
 {¶ 5} In the first assignment of error, Martinez argues two separate errors. First Martinez claims that the search warrant was not supported by sufficient information. Second Martinez claims that the trial court erred in not suppressing the results of the stop of his motor vehicle. A reviewing court "may not substitute [its] own judgment for that of the issuing magistrate by conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which the reviewing court would issue the search warrant." State v. George (1989),45 Ohio St.3d 325, 330, 544 N.E.2d 640. A reviewing court should grant great deference to the magistrate's determination of probable cause. Id. Affidavits in support of a search warrant are required to contain timely information. State v. German,
1st Dist. No. C-040263, 2005-Ohio-527, ¶ 14. "The test is whether the alleged facts justify the conclusion that certain contraband remains on the premises to be searched." Id. at ¶ 15.
 {¶ 6} In support of the search warrant, Detective Don Joseph ("Joseph") submitted an affidavit based upon information received from Agent Mike Ackley ("Ackley") and a confidential informant. According to the affidavit, Ackley told Joseph that marijuana was to be held at 515 E. North St. in Fostoria. Ackley received a sample of the marijuana and arranged a 20 pound purchase through the confidential informant. The police then watched the residence. The police saw a suspect go into the residence and exit with a large brown box. The box was placed in the suspect's vehicle and the suspect and the confidential informant both left the residence in separate vehicles. While stopped for a train, the suspect left his vehicle with the box and placed the box in the confidential informant's truck bed. Some agents followed the confidential informant to a location, opened the box, and found 22 pounds of marijuana. The remaining agents followed the suspect and eventually arrested him. During this whole time, the residence remained under surveillance. Based upon this evidence, Joseph asked the trial court for authority to search the residence, any people found at the residence, and any vehicles located at the residence during the search. The trial court then granted a search warrant to search and seize the following:
Any illegally possessed drugs or controlled substances,firearms, weapons, drug paraphernalia, photos depicting drug useor trafficking, money obtained by drug sales, records of drugsales, items used to prepare drugs for sale or shipment,containers used to store drugs, documents to indicate possessionor control of premises. Any other items or instrumentalities usedto facilitate drug use, drug trafficking or the crime underinvestigation. Computers, Computer programs and equipment, pagersand cell phones used to facilitate drug abuse and drugtrafficking.
Search warrant. The warrant was limited to the residence, the people at the residence and any vehicles "found on the premises 
registered to persons found inside the residence during the time of execution of this warrant." Search warrant. A review of the affidavit indicates that the activities observed and reported in the affidavit occurred on the same date the affidavit was submitted to the trial court. The affidavit also indicates that the activities are part of an ongoing criminal activity. Although there is no information to indicate the reliability of the confidential informant, the observations of the officers are sufficient to suggest that criminal acts are occurring and evidence of those acts will likely be found at the location to be searched. Thus, the trial court did not err in finding the supporting affidavit of the search warrant to be sufficient and by refusing to suppress the results of the search.
 {¶ 7} Martinez next claims that the trial court erred by not suppressing the evidence obtained as a result of the automobile stop. An appellate review of a motion to suppress involves mixed questions of law and fact. State v. Long (1998),127 Ohio App.3d 328, 713 N.E.2d 1. "[A] reviewing court must defer to the trial court's findings of fact if competent, credible evidence exists to support the trial court's findings." State v. Hapney,
4th Dist. Nos. 01CA30, 01CA31, 2002-Ohio-3250 at ¶ 28. "The reviewing court then must independently determine, without deference to the trial court, whether the trial court properly applied the substantive law to the facts of the case." Id.
 {¶ 8} When an officer making an investigative stop relies solely upon a police radio dispatch, the state must demonstrate at a suppression hearing that the facts precipitating the dispatch justified a reasonable suspicion of criminal activity.State v. Kepford, 3rd Dist. No. 3-04-14, 2004-Ohio-6486. In Ohio, an investigatory stop of an automobile is permissible when specific, articulable facts exist to justify a reasonable suspicion that the driver is violating the law. State v.Chatton (1984), 11 Ohio St.3d 59, 463 N.E.2d 1237.
 {¶ 9} In this case, the deputy who stopped Martinez's vehicle testified that the sole reason he stopped the vehicle was because he was asked to do so by the dispatcher. Suppression Tr. 52. Thus, all support for the stop came from the testimony of Lewton. Lewton testified that he had been conducting surveillance of the house[2] in Fostoria and had seen David Ysassi ("Ysassi") leave the home with a box earlier in the day. Ysassi then was seen placing the box in the back of the confidential informant's car later that day. Once the box was retrieved and the contents identified as marijuana, Ysassi was arrested.
 {¶ 10} Lewton testified that he later saw an unknown person leave the home, get into a white van and drive away. Lewton then believed that this person might be leaving to deliver drugs because Ysassi had earlier left the home to deliver drugs. However, Ysassi left the home carrying a box and was a known suspect. Lewton did not know who Martinez was until later after he was stopped in his van. Martinez was not carrying any package when he left the house. There was no evidence that any item had been placed in the van during any of the time that the house was under surveillance. Lewton did not provide any information to justify his suspicion of a drug delivery and did not provide any testimony that any packages were placed in the vehicle which might contain drugs. Lewton never claimed that he had reasonable suspicion to detain the person until the warrant arrived. Instead, Lewton chose to allow the person to leave the premises and proceeded to follow him. While following the vehicle, Lewton was on the phone with other law enforcement personnel giving information necessary to obtain a warrant to search the house and the vehicles located at the house.[3] No warrant was sought to search the vehicle Lewton was following and which was no longer at the residence. Prior to being notified that the warrant was granted, Lewton contacted the Hancock County Sheriff's office and asked that the vehicle be stopped. The sole reason Lewton chose to ask the vehicle to be stopped was that the driver had left the home for some unknown reason and Lewton wanted to search the van.[4] The mere fact that someone had left a location under surveillance is not in and of itself suspicious activity. The home had been under continuous surveillance all day. No suspicious conduct concerning the van allegedly occurred. The driver was not acting suspiciously and committed no traffic violations. In addition, although the driver turned out to be Martinez, who resided in the home, at the time the stop was made, he was not identified and had not been connected with any illegal activity in any way. Without some reasonable, articulable facts to justify a belief that the driver was engaged in illegal activity, the stop is not permitted solely for investigatory purposes.[5]
 {¶ 11} After stopping Martinez, Lewton seized Martinez's cell phone and began scrolling through the prior calls. Although Martinez gave the officers permission to search the vehicle, he did not authorize the search of the cell phone. This court has previously held that a container in a vehicle may be searched if it is reasonably believed to be either contraband or to contain evidence of the commission of a felony. State v. Lamar (1993),86 Ohio App.3d 731, 621 N.E.2d 1232. In this instance, the "container" in question was the cell phone with the contents being the information it contained. Clearly, a cell phone itself is generally not considered to be contraband. Nor will a cell phone usually contain direct evidence that a felony was committed. No claim was made that the cell phone contained such information. At trial, Lewton used the list of calls made to and from the cell phone to connect Martinez to other people involved in drug trafficking. Since one of those people was his live-in girlfriend with whom he had children, the mere fact that phone calls were made between the parties is not evidence that the pair were trafficking in drugs. Thus, both the stop of the vehicle and the search of the cell phone are arguably improper.
 {¶ 12} Assuming that the stop and cell phone search were improper and the use of the evidence obtained was improper does not automatically make the error reversible. To reverse, this court needs to find that the error is prejudicial. No charges were filed in Seneca County resulting from the stop or the search of the cell phone. Thus, no specific charge in the indictment upon which Martinez was tried is affected. Statements made by Martinez at the stop concerning where drugs would be located during the unrelated search of the house were used at trial to connect Martinez to the drugs. Additionally, the phone call list from Martinez's cell phone was introduced to reinforce the connection between Martinez and the other parties. This testimony arguably should not have been permitted. Thus, we will review the evidence at the trial without this testimony to determine if it is sufficient to support a conviction for the charges filed.
 {¶ 13} All of the evidence found at the house is admissible because the officers requested the warrant prior to the stop and no information from the stop was used to obtain it. Thus, the evidence at the house would have inevitably been discovered without the stop. Additionally any statements made by Martinez after the search of the house would also be admissible as the search would inevitably have resulted in an arrest warrant being issued for him and his eventual arrest. At trial, the State presented the testimony of Anthony Tambasco who tested the substances found in the home. Tambasco testified that the substances found in the home were marijuana and cocaine. Tambasco testified that he tested nine packages. Tr. 168-69. Two of the packages contained cocaine, one weighing 133 grams and one weighing .38 grams. Id. The remaining packages contained marijuana and weighed 5,611 grams, 133 grams, 413 grams, 214 grams, 21,989 grams, 333.5 grams, 86.6 grams and 8.4 grams respectively. Id. Tambasco also testified that cocaine is a Schedule II controlled substance. Id. at 170.
 {¶ 14} Next, the State presented the testimony of Michael Ackley, a sheriff's deputy assigned to the Drug Enforcement Administration in Ohio. Ackley testified that he assisted in the search of the master bedroom of the home. Id. at 193. During the search, Ackley found a small bag of what later was identified as cocaine on a dresser in that room. Id. at 194. Ackley also testified that the home belonged to Martinez and Alice Torres, Martinez's girlfriend and the mother of his children. Id. at 199.
 {¶ 15} Ysassi testified that he had been convicted for felony trafficking in marijuana for the sale of approximately 22 pounds of marijuana to the confidential informant. Id. at 207. Ysassi testified that he had obtained the marijuana from Martinez. Id. at 209. Ysassi further testified that on the day of the sale, he went to Martinez's home, Martinez opened the freezer, took out the marijuana, and gave it to Ysassi to sell. Id. 209-12. According to Ysassi, the marijuana was prepackaged in one pound bags and Martinez gave him 22 bags. Id. at 212. Ysassi then put the bags in the box given to the confidential informant in exchange for $25,000. Id. at 212-13. Ysassi testified that he paid Martinez approximately $950 per pound for the marijuana. Id. at 213.
 {¶ 16} Next, the State presented the testimony of Mark Apple, a narcotics agent with the Ohio Attorney General's Office. Apple testified that he set up the surveillance on Martinez's home. Id. at 226. He also assisted in the search of the residence. He located several pounds of marijuana and a bag of cocaine in a Ford Probe parked on the property after Torres told him that she had placed a bag in the car at Martinez's request. Id. at 250. Apple also saw a large block of marijuana in the freezer located in the residence. Id. at 257. Finally Apple testified that the keys to the freezer were found on a keychain bearing a tag describing the vehicle which was the same one which Martinez drove. Id. at 264-65.
 {¶ 17} Michael Masterson, a special agent who does undercover narcotics investigation testified that he found a blue bag containing cocaine in the closet of the master bedroom during the search of the residence. Id. at 312.
 {¶ 18} The State also presented the testimony of Alice Torres. Torres testified that she and Martinez resided in the home with their children. Id. at 384. She testified that she knew Martinez had marijuana in the home, but never witnessed any transactions. Id. at 391. She further testified that the van and the Ford Probe belonged to Martinez. Id. at 401. Additionally Torres testified that at lunch she woke Martinez when Ysassi arrived. Id. at 405. Later Torres returned to work until she received a call from Martinez telling her to take the "black bag in the kitchen" out of the house. Id. at 407. Torres admits that she took the bag from the home and placed it in the Ford Probe. Id. at 410. Torres testified further that the blue package in the closet was not hers. Id. at 423. Finally, Torres admitted that she had been convicted of complicity to possess marijuana and complicity to possess cocaine for aiding and abetting Martinez. Id. at 426.
 {¶ 19} In addition to the prior testimony, the State presented numerous other witnesses. These witnesses provided testimony that confirmed the version of events put forth by Ysassi and Torres. These witnesses also testified as to where in the home the various packages of controlled substances were found. Although none of the witnesses were able to directly connect Martinez with the drugs, the circumstantial evidence is substantial. The drugs were found in Martinez's home, in the closet of the master bedroom and in Martinez's computer room. A review of all of the evidence, even excluding the evidence obtained from the questionable stop, is more than sufficient to support the jury's verdict. Thus, the effect of any alleged error relating to the stop is harmless. For this reason and that discussed above concerning the search warrant, the first assignment of error is overruled.
 {¶ 20} In the third assignment of error, Martinez argues that the prosecutor engaged in misconduct by arguing constructive possession. For a reversal for prosecutorial misconduct to occur, the appellant must show that the misconduct affected the fairness of the trial. Here, Martinez argues that since the trial court refused to permit a specific instruction on constructive possession, the State could not argue that theory. However, the State is free to argue any reasonable theory. The jury was properly instructed as to the definition of possession. Since this court must presume the jury followed the instructions of the trial court, the record contains no evidence that the State's argument affected the fairness of the trial. The jury made its decision based upon the evidence before it and the instructions provided by the trial court, not the argument of the State. The third assignment of error is overruled.
 {¶ 21} Martinez also claims that the trial court erred in sentencing him. Pursuant to the ruling of the Ohio Supreme Court in State v. Foster, ___ Ohio St.3d ___, 2006-Ohio-856, we find that Martinez's sentence is void as being based upon unconstitutional statutes. Thus, the second assignment of error is sustained.
 {¶ 22} The judgment of the Court of Common Pleas of Seneca County is affirmed as to the conviction. The sentence of the Court of Common Pleas of Seneca County is vacated and the matter remanded for further proceedings.
Judgment affirmed in part, vacated in part and the causeremanded.
 Shaw, J., concurs in judgment only.
[1] All of the charges in the indictment arose from the evidence found in the house. No charges were brought in Seneca County for anything found in the vehicle stop.
[2] The home belonged to the family of Martinez's girlfriend.
[3] The warrant was obtained after the vehicle was stopped. At the time Martinez left the residence, no application for a warrant had been made and no reasonable suspicion existed for detaining Martinez at the home while a warrant was obtained.
[4] This court also notes that Lewton testified that he did not give the dispatcher any reason for his request to stop the car. Thus, the only one with any knowledge of the reasonable suspicion would have been Lewton.
[5] Merely because someone leaves a residence where a crime was allegedly committed earlier does not automatically mean that they have any connection to the offense. No testimony was given that connected Martinez with the offense prior to the time he was stopped. There was no evidence presented that would indicate that Martinez was engaged in criminal activity or was on his way to engage in criminal activity beyond the mere belief of Lewton that Martinez might be on his way to deliver drugs. No testimony was presented to objectively support Lewton's belief.