[Cite as *State v. Urdiales*, 2015-Ohio-3632.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HENRY COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    CASE NO. 7-15-03

v.

ROBERTO G. URDIALES,

    O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Henry County Common Pleas Court
Trial Court No. 14-CR-0021

Judgment Affirmed

Date of Decision:  September 8, 2015

APPEARANCES:

    *Billy D. Harmon* for Appellant

    *J. Hawken Flanagan* for Appellee

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant, Roberto G. Urdiales ("Urdiales"), brings this appeal from the judgment of the Common Pleas Court of Henry County, Ohio, denying his motion to suppress, finding him guilty upon his entry of a no contest plea to a charge of possession of cocaine, a felony of the fifth degree in violation of R.C. 2925.11(A)(C)(4)(a), and sentencing him to eleven months in prison. For the reasons that follow, we affirm the trial court's judgment.

### *Relevant Background*

{¶2} On or about March 6, 2014, Sheriff Michael Bodenbender ("Sheriff Bodenbender"), applied for a search warrant authorizing installation and monitoring of a GPS tracking device on the target vehicle, which was a 2002 Ford Windstar, registered to Urdiales's mother. Together with his application, Sheriff Bodenbender attached an affidavit, in which he attested that the information obtained through the GPS monitoring would provide evidence of possession of drugs in violation of R.C. 2925.11, and trafficking in drugs in violation of R.C. 2925.03. (State's Ex. 1.) The affidavit included the following facts:

> Your affiant has been a law enforcement officer with the Henry County Sheriff's Office for over 20 years, and has extensive training and experience in the investigation of drug offenses.
>
> Within the past 24 hours this affiant has had contact with a confidential and reliable informant who advised that the target vehicle, to wit: a 2002 Ford Windstar, OH Registration DRN 6732, is being used to transport illegal drugs, namely cocaine, into Henry County, Ohio. The target vehicle is titled in the name of Lily Urdiales; however, the informant advised this affiant the vehicle has

been and will be operated by the title owner's son, Roberto Urdiales, to transport illegal drugs, namely cocaine, into Henry County, Ohio. The informant further advised that the vehicle, when operated by Roberto Urdiales, travels to Toledo, Ohio, on Friday and/or Saturday of each week to procure the illegal drugs which are then transported into Henry County, Ohio. Your affiant questioned the informant as to the basis for his information, and the informant advised that he received this information directly from Roberto Urdiales. Your affiant believes that information received from the confidential informant referenced herein is accurate and reliable, and your affiant further declares that information provided by this confidential informant in the past has proven to be accurate and has led to an arrest and conviction.

(*Id.*) A judge of the trial court approved the warrant application.

{¶3} A GPS tracking device was placed on the target vehicle on March 7, 2014. (State's Ex. 4.) Thereafter, Sheriff Bodenbender and other law enforcement personnel from the Henry County Sheriff's Office monitored the vehicle's location. The monitoring indicated that on Friday evening, March 7, 2014, the vehicle traveled to Toledo, Lucas County, Ohio, stopping at three or four locations in Toledo and at one location in Wood County, Ohio. When the vehicle entered Henry County, Sergeant Marc Ruskey ("Sergeant Ruskey"), who was also tracking the vehicle, initiated a stop. He asked the driver to step out of the vehicle and conducted a pat-down for weapons. A K-9 unit and Sheriff Bodenbender arrived on the scene. After the K-9 alerted to the vehicle for narcotics, Sheriff Bodenbender searched Urdiales and recovered cocaine and some cash.

{¶4} As a result of the search, Urdiales was arrested and charged with possession of drugs, a felony of the fifth degree in violation of R.C. 2925.11(A).

Urdiales entered a plea of not guilty and was released upon his own recognizance. After receiving discovery, Urdiales filed a motion to suppress evidence obtained as a result of the stop and search on March 7, 2014. In his motion Urdiales alleged that the affidavit submitted in support of the search warrant was invalid as not based upon probable cause. He further asserted that the stop and search of his vehicle were "not based upon reasonable suspicion and/or probable cause." (R. at 16.) Finally, he argued that the warrantless search of his person was unconstitutional. The trial court conducted a hearing on the motion.

### *Relevant Testimony*

{¶5} Sheriff Bodenbender testified about the information provided to him by the confidential informant in this case. He attested that he had been in phone contact with this confidential informant for two or three years and had spoken to him "dozens of times" regarding drug activity or other criminal activity, such as, for example, a stolen motorcycle. (Tr. at 17.) The information given by this confidential informant had always proven reliable. (Tr. at 14-15.)

{¶6} Sheriff Bodenbender talked about the information provided by the confidential informant regarding Urdiales and the alleged drug activity. In addition to repeating the facts that were in the affidavit, Sheriff Bodenbender testified about other details given by the confidential informant. In particular, the confidential informant told Sheriff Bodenbender that the suspect activity occurred every week between 8:00 p.m. and 10:00 p.m., on Friday or Saturday and it

included cocaine. (Tr. at 19-20, 27.) The confidential informant indicated that "[h]e had been told specifically by Mr. Urdiales" about these events. (Tr. at 20-21.) Based on this information, Sheriff Bodenbender applied for a search warrant to authorize the installation and monitoring of a GPS tracker.

{¶7} Sheriff Bodenbender further testified about the night of March 7, 2014, when the GPS monitoring of the target vehicle occurred. Based upon the information obtained from the tracking device, Sheriff Bodenbender determined that the vehicle's movements and the timing of these movements were consistent with the information provided by the confidential informant. (Tr. at 9-10.) Therefore, relying on his experience with this confidential informant and on the personal observations on March 7, 2014, Sheriff Bodenbender believed that Urdiales was transporting drugs into Henry County. (Tr. at 15.)

{¶8} Sheriff Bodenbender traveled to the site of the vehicle stop and confirmed that the driver was Urdiales. (Tr. at 10-11.) When he arrived at the scene of the stop, Urdiales was standing outside of his vehicle, while the K-9 unit was "sniffing around the van or inside." (Tr. at 35-36.) The K-9 alerted the law enforcement personnel that there were drugs present. (Tr. at 11-12.) Sheriff Bodenbender testified that Urdiales was standing "right beside" his vehicle when the dog alerted to the presence of drugs. (Tr. at 36-37.) While the dog continued the vehicle search, Sheriff Bodenbender patted down Urdiales and recovered "two little bags of what we thought was cocaine," and some cash. (Tr. at 12-13, 37.)

Sheriff Bodenbender testified that this pat-down search was based on all the information available to him at this point, including the K-9 alert. (Tr. at 39.) A field test conducted at the scene came back positive for cocaine. (Tr. at 39.)

{¶9} Sergeant Ruskey was the next person testifying at the hearing. He indicated that on March 7, 2014, as he conducted the GPS monitoring, he was aware that Urdiales was the person driving the vehicle and that the vehicle was monitored for a suspicion of drug trafficking. (Tr. at 46-47, 49, 52.) He was given the description of the vehicle. (Tr. at 54.) He knew other details of the suspected drug activity, as they were conveyed to him by Sheriff Bodenbender, including the time the vehicle was supposed to travel to Toledo. (Tr. at 54-56.) When the vehicle entered Henry County, Sergeant Ruskey traveled in the direction indicated by the GPS unit and identified the target vehicle. (Tr. at 48.) Sergeant Ruskey testified that at this point he believed that the vehicle or its occupants would be in possession of illegal drugs. (Tr. at 49.) Therefore, he initiated a stop based on his belief that the vehicle would contain contraband or illegal drugs, as indicated in the search warrant. (Tr. at 48-49.)

{¶10} When Urdiales exited the vehicle, Sergeant Ruskey patted him down for weapons and placed him in handcuffs. (Tr. at 61-62.) He again testified that these precautions were based on the information collected through the investigation and the monitoring, which led him to believe that the vehicle would contain narcotics. (Tr. at 61-63.) According to Sergeant Ruskey, Urdiales was not

under arrest at this point. (Tr. at 70-72.) Sergeant Ruskey testified that Urdiales was standing right behind his vehicle when the K-9 unit was deployed, within 40 feet of his vehicle. (Tr. at 51, 63.) Sergeant Ruskey specified that the search by Sheriff Bodenbender occurred after the K-9 alerted to the presence of drugs, but the K-9 continued the search while Sheriff Bodenbender was patting down Urdiales. (Tr. at 51-52.) Urdiales was placed under arrest upon the recovery of the drugs from his person. (Tr. at 70-71.)

{¶11} Following the hearing, the trial court denied the motion to suppress. On January 13, 2015, Urdiales withdrew his previous not guilty plea and entered a plea of no contest. The trial court found Urdiales guilty and sentenced him to eleven months in prison. Thereafter, Urdiales filed the instant appeal in which he raises three assignments of error, as quoted below.

I. **THE TRIAL COURT ERRED WHEN IT FOUND THAT THE SHERIFF'S AFFIDAVIT IN SUPPORT OF HIS APPLICATION FOR A GPS TRACKING WARRANT WAS SUFFICIENT FOR PURPOSES OF THE ISSUANCE OF A WARRANT.**

II. **THE TRIAL COURT ERRED WHEN IT FAILED TO SUPPRESS EVIDENCE AGAINST APPELLANT PROCURED AS A RESULT OF AN UNCONSTITUTIONAL STOP OF APPELLANT'S VEHICLE, SAID EVIDENCE TAKEN IN VIOLATION OF APPELLANT'S CONSTITUTIONAL RIGHTS UNDER THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 14, ARTICLE I OF THE OHIO CONSTITUTION.**

III. **THE TRIAL COURT ERRED WHEN IT FAILED TO SUPPRESS EVIDENCE AGAINST APPELLANT**

**PROCURED AS A RESULT OF AN UNCONSTITUTIONAL SEARCH OF APPELLANT'S PERSON, SAID EVIDENCE TAKEN IN VIOLATION OF APPELLANT'S CONSTITUTIONAL RIGHTS UNDER THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 14, ARTICLE I OF THE OHIO CONSTITUTION.**

{¶12} All three assignments of error challenge the trial court's ruling on Urdiales's motion to suppress. An appellate review of the trial court's decision on a motion to suppress involves a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8; *State v. Norman*, 136 Ohio App.3d 46, 51, 735 N.E.2d 953 (3d Dist.1999). We will accept the trial court's factual findings if they are supported by competent, credible evidence, because the "evaluation of evidence and the credibility of witnesses" at the suppression hearing are issues for the trier of fact. *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992); *Norman* at 51; *Burnside* at ¶ 8. But we must independently determine, without deference to the trial court, whether these factual findings satisfy the legal standard as a matter of law because "the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review." *Norman* at 52; *Burnside* at ¶ 8. With this legal standard in mind, we proceed to review the issues raised by Urdiales as they pertain to the trial court's denial of his motion to suppress.

*First Assignment of Error—Affidavit in Support of the Search Warrant*

{¶13} In the first assignment of error, Urdiales challenges the sufficiency of Sheriff Bodenbender's probable cause affidavit in support of the search warrant authorizing installation and monitoring of the GPS tracking device on the target vehicle. When reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant, our duty is "to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *State v. George*, 45 Ohio St.3d 325, 332, 544 N.E.2d 640 (1989), paragraph two of the syllabus, citing *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317 (1983). We do not conduct "a *de novo* determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant," but instead accord great deference to the trial court's determination of probable cause and resolve "doubtful or marginal cases" in favor of upholding the warrant. *Id.*; *accord State v. Jones*, __ Ohio St. ___, 2015-Ohio-483, ___ N.E.3d ___, ¶ 14, 18, quoting *George id.* Thus, the question on appeal is not whether *we* would find probable cause to issue the search warrant based on the submitted affidavit, but whether the issuing judge "had a substantial basis for concluding that probable cause existed." *George* at paragraph two of the syllabus.

{¶14} When reviewing the sufficiency of an affidavit in support of a search warrant, both the trial court and the appellate court are limited to the information that was "brought to the attention of the [issuing judge]." *State v. Graddy*, 55

Ohio St.2d 132, 134, 378 N.E.2d 723 (1978), fn.1; *accord State v. OK Sun Bean*, 13 Ohio App.3d 69, 71, 468 N.E.2d 146 (6th Dist.1983) ("the affidavit's legal sufficiency may be determined *only* from the information actually furnished to the issuing judge.") (Emphasis sic.) But this information is analyzed under the totality-of-the-circumstances approach, which we recognized in *State v. Garza*, 2013-Ohio-5492, 5 N.E.3d 89, ¶ 25-26 (3d Dist.), *appeal not accepted*, 138 Ohio St.3d 1494, 2014-Ohio-2021, 8 N.E.3d 964 (2014).

> "The task of the issuing magistrate is simply to make a practical, *common-sense decision* whether, given *all the circumstances* set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."

(Emphasis added.) *George* at 329, quoting *Gates* at 238; *see also State v. Thomas*, 61 Ohio St.2d 223, 227-228, 400 N.E.2d 401 (1980) ("In examining the affidavit for a search warrant in the cause sub judice, we are guided by the interpretive rules that such affidavits are to be tested in a common sense manner * * * ."), citing *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741 (1965). We will apply this common-sense totality-of-the-circumstances test to both "the original probable cause determination" of the issuing judge and to our determination of whether the issuing judge had a "substantial basis" for finding that probable cause existed. *George* at 329.

{¶15} Urdiales alleges that the information provided in the affidavit was insufficient for the following reasons: (1) lack of the "underlying circumstances of

how the confidential informant came to know that the defendant was allegedly transporting narcotics"; (2) the informant's "reliability was unsupported by any facts in the affidavit"; (3) the affidavit fails to state that the informant "saw any evidence of drug possession or transport"; (4) lack of the informant's name or identity; (5) lack of "the details regarding any supposed conviction this informant's information allegedly helped facilitate." (App't Br. at 3-5.) In his argument Urdiales relies solely on *Graddy*, 55 Ohio St.2d 132, 378 N.E.2d 723, and using our analysis in *Garza* word-for-word, he suggests that the Ohio Supreme Court's holding warrants reversal in this case. Yet, neither *Graddy* nor *Garza* supports Urdiales's argument.

{¶16} As we recognized in *Garza*,

In *Graddy*, a warrant was issued based on an affidavit alleging that a police detective believed that drugs were located in the described premises. That affidavit contained allegations from an informant whose reliability was unsupported by any facts in the affidavit. *Id.* at 136-137. Further, the conclusion that drug activity was occurring was also unsupported by any facts in the affidavit. *Id.* The Ohio Supreme Court held that "the belief or conclusion of the affiant, or the informant in a situation where hearsay is furnished by informant to the affiant, *without presentation of the facts to the magistrate upon which the conclusion is based*, is constitutionally an insufficient basis upon which the magistrate may determine the existence of probable cause." (Emphasis added.) *Id.* at 134. The court specifically focused on the fact that the affidavit lacked "Any of the underlying circumstances from which the informant concluded the drugs were on the premises." *Id.* at 139.

(Emphasis sic.) *Garza* at ¶ 25.

**{¶17}** The distinctions between *Graddy* and the current case are readily apparent.

**{¶18}** First, in the instant case, the informant's reliability was supported by the facts in the affidavit. In particular, the affidavit stated that "information provided by this confidential informant in the past has proven to be accurate and has led to an arrest and conviction." (State's Ex. 1.) The Ohio Supreme Court expressly recognized sufficiency of such a statement in support of the confidential informant's credibility. *See Graddy* at 137 ("when an informant has furnished reliable information in the past, it 'gives the magistrate a definite indication of credibility.' Such an averment provides an underlying circumstance for the magistrate to independently assess the informant's credibility."), quoting *State v. Karr*, 44 Ohio St.2d 163, 166, 339 N.E.2d 641 (1975). The Ohio Supreme Court contrasted the statement "information from reliable informant whose information has proven reliable," which was insufficient to establish the informant's credibility, with "information from a reliable informant 'who has given reliable and factual information in the past which has led to several arrests,' " and "information from a reliable informant 'who has given truthful and factual information in the recent past,' " which were both found sufficient to satisfy the minimum for establishing the credibility of the informant. *Graddy* at 137, quoting *Karr* at 166. "An informant's past performance is an underlying circumstance from which an affiant can properly conclude that he is credible." *State v. Dodson*,

43 Ohio App.2d 31, 34, 332 N.E.2d 371 (8th Dist.1974), citing *McCray v. State of Ill.*, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967). Therefore, the informant's credibility in this case was sufficiently supported.

{¶19} Second, the affidavit here included more than just "the belief or conclusion of the affiant" or the informant, which was found insufficient in *Graddy*, 55 Ohio St.2d at 134, 378 N.E.2d 723. It had the required "presentation of the facts * * * upon which the conclusion is based." *Id.* In addition to reciting the fact pattern in which the criminal activity was alleged to be occurring, the affidavit stated that the informant's conclusions or suspicions of criminal activity were based on the information received directly from Urdiales. The Ohio Supreme Court recognized that the informant's "personal observation of the fact or events described to the affiant" is "a common and acceptable basis for the informant's information." *Id.* at 139-140, citing *Karr* at 165. What the confidential informant heard in the instant case is akin to the "observation" expressly authorized by the Ohio Supreme Court in *Graddy* and *Karr*. *See State v. Nabozny*, 54 Ohio St.2d 195, 204-205, 375 N.E.2d 784 (1978) (finding that affidavits "recited the events within the informant's personal experience" when they included statements that the informant had heard from a co-conspirator), *vacated in part on other grounds sub nom. Nabozny v. Ohio.*, 439 U.S. 811, 99 S.Ct. 70, 58 L.Ed.2d 103 (1978). Therefore, unlike in *Graddy*, the affidavit here

included the "underlying circumstances from which the informant concluded" that criminal activity was occurring. *Graddy* at 135.

{¶20} Furthermore, failure to satisfy the two elements discussed in *Graddy* does not automatically invalidate a search warrant. Subsequent to the United States Supreme Court's decision in *Gates*, 462 U.S. 213, 103 S.Ct. 2317, the affiant is not required "to reveal his informant's 'basis of knowledge' and provide sufficient facts to establish the informant's 'veracity' or the 'reliability' of the informant's report" in order to give grounds for a probable cause finding. *George*, 45 Ohio St.3d at 328, 544 N.E.2d 640, fn. 3. Instead, the issuing judge must be provided with enough information to make "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, *including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information*, there is a fair probability that contraband or evidence of a crime will be found in a particular place." (Emphasis added.) *Id.* at 329, quoting *Gates* at 238-239; *see also State v. Gibler*, 3d Dist. Defiance No. 4-2000-06, 2000 WL 1344545, \*6 ("an unidentified informant's 'reliability,' 'veracity,' and 'basis of knowledge' should not be examined as separate elements, but rather are merely part of the totality of the information to be weighed by the [issuing judge] in making a probable cause determination. See *Gates,* 462 U.S. at 230."). Therefore, Urdiales's reliance on *Graddy* alone to challenge the warrant affidavit is insufficient.

**{¶21}** The totality of the circumstances presented in this case favors the finding of probable cause. In addition to the information discussed above, the affidavit included the vehicle's year, make and model, registration number, the name of the vehicle owner, and the name of the driver, as given to the affiant by the informant. The Ohio Supreme Court recognized that an extensive description of the facts or events in the affidavit may add credibility to the information presented therein. *Graddy* at 140. The affidavit was further based on Sheriff Bodenbender's extensive training and experience.

**{¶22}** We note that Urdiales fails to legally support his suggestion that the affidavit was deficient for lack of the informant's name or identity. Conversely, it is well-established that "[a] search warrant affidavit may properly be based * * * on tips received from unnamed informants whose identity often will be properly protected from revelation." *State v. Jefferson*, 5th Dist. Richland No. 09-CA-20, 2009-Ohio-5485, ¶ 46, citing *McCray*, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967). Similarly, Urdiales fails to support his other challenges with any reasons, and based on the above reasoning, we find them meritless.

**{¶23}** We hold that under the totality-of-the-circumstances approach, the issuing judge had substantial basis to properly conclude that there was probable cause to issue the search warrant based on all the facts in the affidavit. Accordingly, we reject Urdiales's contention that the affidavit in support of the search warrant was insufficient and we overrule the first assignment of error.

*Second Assignment of Error—Justification to Stop*

**{¶24}** In the second assignment of error Urdiales claims that the warrantless stop of his vehicle by Sergeant Ruskey was unconstitutional. A warrantless vehicle stop is constitutionally valid "if an officer has a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime," or that the vehicle contains contraband. *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7; *State v. Ward*, 1st Dist. Hamilton No. C-040379, 2005-Ohio-3036, ¶ 30. When we review the constitutionality of a traffic stop, we " 'must view the stop in light of the totality of the surrounding circumstances' " and determine whether "specific, articulable facts" in support of the reasonable suspicion existed. *State v. Dicke*, 3d Dist. Auglaize No. 2-07-29, 2007-Ohio-6705, ¶ 13, quoting *State v. Fields*, 3d Dist. Crawford No. 3-92-13, 1992 WL 224531, *1 (Sept. 10, 1992); *State v. Martinez*, 3d Dist. Shelby No. 133-04-49, 2006-Ohio-2002, ¶ 8.

**{¶25}** In the instant case, Sergeant Ruskey testified that based on the information available to him, he believed the vehicle would contain contraband. In particular, he knew that the target vehicle was being monitored for suspicion of drug trafficking. He was given the description of the vehicle and knew the details of the search warrant. He additionally knew what time the suspected drug activity was to occur. All these facts were confirmed by his observation of the vehicle's movements on the GPS tracker monitor. Upon the vehicle entering Henry County,

Sergeant Ruskey confirmed that the vehicle matched the description previously given to him. Based on all these specific facts, we hold that the trial court did not err in finding that there was a reasonable suspicion to stop the target vehicle.

{¶26} At the same time, we reject Urdiales's assertion that the stop was invalid due to the lack of "independent corroborating information" to support statements of the reliable confidential informant. (App't Br. at 8.) Even though Urdiales fails to provide any legal support for his suggestion that a traffic stop in this case required "independent corroborating information,"[1] we recognize that the facts of the instant case provide plenty of corroboration for the confidential informant's statements, as further discussed in our analysis of the third assignment of error.

{¶27} Accordingly, we overrule the second assignment of error.

### Third Assignment of Error—Warrantless Search of Urdiales's Person

{¶28} In the third assignment of error, Urdiales challenges the warrantless search of his person by Sheriff Bodenbender. It is well established that a warrantless search is per se unreasonable unless certain "specifically established and well delineated exceptions" exist. *City of Xenia v. Wallace*, 37 Ohio St.3d

---

[1] The case cited by Urdiales as allegedly having the example of "independent corroborating information" is *State v. Winningham*, 1st Dist. Hamilton No. C-110134, 2011-Ohio-6229, *judgment vacated on other grounds,* 132 Ohio St.3d 77, 2012-Ohio-1998, 969 N.E.2d 251. Yet, *Winningham* does not support Urdiales's position. The alleged independent corroborating information in that case was obtained prior to the issuance of a search warrant for installation of a GPS tracking device, and it was not at issue in the case. The First District Court of Appeals held that a reasonable and articulable suspicion to stop the vehicle existed "[o]nce the GPS tracker had alerted the police officers that Winningham's truck had left the Interstate-275 loop and traveled to Chicago." *Id.* at ¶ 25. Therefore, *Winningham* contradicts, rather than supports, Urdiales's argument.

216, 218, 524 N.E.2d 889 (1988), quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 454–455, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The Ohio Supreme Court has explicitly recognized the following seven exceptions to the requirement that a warrant be obtained prior to a search:

(a) a search incident to a lawful arrest;

(b) consent signifying waiver of constitutional rights;

(c) the stop-and-frisk doctrine;

(d) hot pursuit;

(e) probable cause to search, and the presence of exigent circumstances;

(f) the plain view doctrine; and

(g) administrative search.

*Stone v. City of Stow*, 64 Ohio St.3d 156, 164, 593 N.E.2d 294 (1992), fn. 4. The burden is on the state to establish that a warrantless search is valid under one of these exceptions. *State v. Williams*, 3d Dist. Seneca No. 13-06-46, 2007-Ohio-5489, ¶ 19. The trial court in the instant case denied the motion to suppress, reasoning that there existed probable cause and exigency because "the contraband could have been discarded or lost while waiting for a warrant." (R. at 18 at 7.) Urdiales argues that this finding was in error because the dog alerting to the presence of drugs *in the vehicle* did not give Sheriff Bodenbender probable cause to search his person.

{¶29} There appears to be a disagreement between courts over whether a canine alert to the vehicle, *alone*, is sufficient to constitute probable cause to search an occupant of the vehicle. *See State v. Robinson*, 9th Dist. Wayne No. 10CA0022, 2012-Ohio-2428, ¶ 10 (rejecting the trial court's determination "that a positive canine alert alone justified the search of the vehicle and Robinson"); *State v. McCorvey*, 11th Dist. Ashtabula No. 2010-A-0038, 2011-Ohio-3627, ¶ 33 (summarizing law from several jurisdictions that refused to find probable cause based on canine alert alone and recognizing that the United States Court of Appeals for the Tenth Circuit ruled to the contrary); *State v. Griffin*, 949 So.2d 309 (Fla.App.2007) (recognizing the conflict between courts in Florida and urging the supreme court of the state to review the issue in light of the United States Supreme Court's recent decisions in *Maryland v. Pringle,* 540 U.S. 366, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003), and *Illinois v. Caballes,* 543 U.S. 405, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005)); *State v. Ofori,* 170 Md.App. 211, 906 A.2d 1089 (2006) (holding that the *Pringle* decision is "absolutely dispositive" in establishing that a dog alert on a car provides probable cause to search the driver and passengers because of the "close association" between the contraband and the car's occupants); *State v. Jones*, 4th Dist. Washington No. 03CA61, 2004-Ohio-7280, ¶ 43 ("Although the dog's positive reaction to the vehicle while Jones was seated in it was clearly relevant, this factor alone is insufficient to constitute probable cause to search Jones' person."); *Wallace v. State*, 142 Md.App. 673,

686, 791 A.2d 968 (Md.App.2002) (noting a distinction between cases where the driver is the sole occupant of the vehicle and cases with multiple occupants and stating that "[b]oth the Court of Appeals and this Court have implied in recent cases, albeit in *dicta,* that a drug dog's positive alert may give rise not only to the right to search a car but the right to arrest an occupant without a warrant. * * * In both of these cases, however, the driver was the sole occupant of the car."); *United States v. Anchondo*, 156 F.3d 1043 (10th Cir.1998) (holding that a canine alert to the inside of the defendant's car provided probable cause necessary to arrest the defendant). For the purpose of this opinion, we need not reach this issue, however.

{¶30} "Probable cause exists when a reasonably prudent person would believe that there is a fair probability that the place to be searched contains evidence of a crime." *State v. Blandin*, 3d Dist. Allen No. 1-06-107, 2007-Ohio-6418, ¶ 50, citing *Gates*, 462 U.S. at 246, 103 S.Ct. 2317, 76 L.Ed.2d 527.

> In determining whether a law enforcement officer possessed probable cause to conduct a search, a court must review the totality of the circumstances known to the officer at the time of the search. *Beck v. Ohio* (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142. "Probable cause must be based upon objective facts that would justify the issuance of a warrant by a magistrate." [*State v.*] *Moore*, 90 Ohio St.3d [47,] 49, [2000-Ohio-10, 734 N.E.2d 804 (2000)], citing *State v. Welch* (1985), 18 Ohio St.3d 88, 92, 18 OBR 124, 127, 480 N.E.2d 384. Thus, the officer must possess sufficient facts from a reasonably trustworthy source that a search will uncover evidence of a crime. See *State v. Hill* (May 15, 1991), Jackson App. No. 632; *Beck,* 379 U.S. at 91; see, also, *State v. Williams,* Ross App. No. 10CA3162, 201-1Ohio-763.

*State v. Kelley*, 4th Dist. Ross No. 10CA3182, 2011-Ohio-3545, ¶ 23. Because the determination of probable cause is made from the totality of the circumstances present in a particular case, and the instant case involves more than just a dog alerting to the vehicle, we review the multiple factors present here.

{¶31} At the time Sheriff Bodenbender arrived at the scene of the stop, he had recent information provided by a reliable confidential informant about Urdiales's identity, the vehicle he would be driving, the vehicle's owner, as well as the time and route of travel. All this information was corroborated by Sheriff Bodenbender's observations during the tracking of the target vehicle and on the scene of the stop. Sheriff Bodenbender also observed the K-9 alert to the presence of drugs when sniffing the vehicle. The trial court determined that these facts were sufficient for the finding of probable cause.

{¶32} In arriving at its decision, the trial court relied on our opinion in *Blandin*, *supra*. There, law enforcement officers had information from a confidential informant, indicating that the defendant, Blandin, was involved in illegal drug activity. *Id.* at ¶ 2-4. The officers conducted surveillance of Blandin as he drove his vehicle, and "observed a passenger that Blandin picked up at a gas station enter and leave the vehicle within a short period of time." *Id.* at ¶ 6. After Blandin picked up another passenger, the officers stopped his vehicle and conducted a dog sniff while Blandin was still in the car. *Id.* at ¶ 7. Upon the dog alerting to the presence of drugs in the vehicle, Blandin stepped out of the car. *Id.*

at ¶ 8-9. Officers did not find contraband in the vehicle, but they noticed "a lump at the top line of Blandin's pants." *Id.* at ¶ 9. Additionally, the officers "had received tips that Blandin often concealed contraband in the crotch area of his pants," and the passenger of Blandin's vehicle "indicated to officers that the [sic] Blandin placed the contraband down his pants upon being stopped." *Id.* We held that the officer had probable cause to search Blandin's person. *Id.* at ¶ 50.

{¶33} While Urdiales's case involves tips from a confidential informant, independent police surveillance, and a dog sniff, we recognize that it differs from *Blandin* in several respects. First, in *Blandin*, the dog alert occurred while the defendant was still in the car, which might have been used for an inference that the drugs were either in the vehicle or with the vehicle's occupants. Second, the search of Blandin's vehicle did not reveal any drugs, which might suggest that the dog reacted to the drugs present on Blandin or his passenger. *See McCorvey*, 11th Dist. Ashtabula No. 2010-A-0038, 2011-Ohio-3627, at ¶ 35 (holding that the canine's alert to appellee's car and its subsequent negative search were pertinent factors in the probable-cause inquiry). Third, the police officers had information that Blandin would conceal drugs in his pants. Fourth, the officers noticed "a lump" on Blandin's pants. These additional circumstances are not present in the instant case. Nevertheless, this does not necessitate a conclusion that probable cause was lacking.

{¶34} The Fourth District Court of Appeals held that the finding of probable cause was proper in *Kelley*, 4th Dist. Ross No. 10CA3182, 2011-Ohio-3545. There, detectives "received information from two confidential informants that appellant would be traveling on State Route 104 from Chillicothe to Columbus in a black Chevy pick-up truck in order to obtain a large amount of crack cocaine." *Id.* at ¶ 3. Upon this information, a law enforcement officer stopped the vehicle, which included a driver and two passengers. *Id.* at ¶ 4, 8. When at the scene, a canine alerted on the passenger side of the vehicle, where Kelley was seated. *Id.* at ¶ 5, 27. The officer asked Kelley to exit the vehicle, and "noticed a piece of tissue paper sticking out of the back side of appellant's waistband." *Id.* at ¶ 5. The officer "further observed that appellant appeared 'tense, stiff and nervous' and that he walked '[k]ind of tight, stiff.' " *Id.* The officer conducted a search of "exterior of [Kelley's] clothing" for contraband. *Id.* at ¶ 6. In reviewing the existence of probable cause under the totality of the circumstances, the Court of Appeals noted that the information from the confidential informants proved reliable, and the dog alerted to the side of the vehicle where Kelley was sitting. *Id.* at ¶ 27. The court further recognized the additional facts and circumstances, including "toilet paper sticking out from appellant's pants," "stiff walking and nervous behavior and the observation that appellant's companion also had toilet paper sticking out of his pants." *Id.* All of

- 23 -

these facts were sufficient "to warrant a reasonable person to believe that drugs would likely be located on appellant's person." *Id.*

**{¶35}** A holding of the Tenth District Court of Appeals is even more instructive on the resolution of the instant case:

> Upon review, we find that the confidential informant's tip, which, as noted above, included the name and description of the defendant, the location and time of the arranged transaction, a description of the defendant's vehicle, as well as the informant's subsequent allegation at the scene that he observed defendant in possession of cocaine, furnished the police with probable cause. However, assuming that the officers did not have probable cause to proceed based on this information alone, we find that the subsequent actions of the narcotics detention dog alerting to the presence of drugs on the driver's seat of the vehicle, in conjunction with the informant's tip, provided officers with probable cause to arrest.

*State v. Walker*, 10th Dist. Franklin No. 97APA09-1219, 1998 WL 429121, *6 (July 28, 1998). The reasoning of the Tenth District Court of Appeals suggests that the confidential informant's tip alone, if sufficiently corroborated, may give the police "probable cause to conduct a search for contraband." *Id. See also McCorvey*, 11th Dist. Ashtabula No. 2010-A-0038, 2011-Ohio-3627, at ¶ 21-25 (distinguishing *McCorvey*, where an anonymous tip without an independent corroboration was insufficient to give probable cause for the search, from cases where an informant's tip was sufficiently supported by independent corroboration).

**{¶36}** To the extent that other Ohio courts have refused to find probable cause to search an occupant of a vehicle after a canine alert to the vehicle, we find

these cases distinguishable or not persuasive. For example, in *Robinson*, 9th Dist. Wayne No. 10CA0022, 2012-Ohio-2428, a police officer observed Robinson's vehicle in an area known for drug trafficking. *Id.* at ¶ 6. After learning that the vehicle's owner had a prior drug conviction, the officer followed it and stopped it upon observing two traffic violations. *Id.* Robinson told the officer that his reason for a visit in the area was "dropping off an individual," who was known to the officer "as one involved in illegal drug activity." *Id.* While the officer was talking to Robinson, who was still in his car, a canine brought to the scene alerted to the presence of drugs at the driver's door. *Id.* at ¶ 7. After Robinson stepped out of the car, the K-9 officer discovered loose marijuana in the vehicle. A subsequent search of Robinson's person revealed "a wad of money" in his pocket and two bags of cocaine in his socks. *Id.* Appeal of the case concerned State's arguments that the searches were consensual, they were merely *Terry*-type[2] searches, or they were incident to a lawful arrest. *Id.* at ¶ 8. The appellate court rejected these arguments. Furthermore, the Ninth District Court of Appeals rejected the trial court's determination "that a positive canine alert *alone* justified the search of the vehicle *and Robinson*." (Emphasis added.) *Id.* at ¶ 10. Without engaging in the totality-of-the-circumstances analysis, the court concluded, "in the facts before us, the canine alert did not justify the full search of Robinson's person." *Id.*

_____

[2] *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

**{¶37}** The Ninth District Court of Appeals focused on the fact that the trial court's probable cause determination was based on "the canine alert alone." *Id.* at ¶ 10. Yet, the facts of the case indicated that the police officers had additional reliable information on which they could have based their belief of a fair probability that the place to be searched contained evidence of a crime. In particular, Robinson was in an area known for drug activity and admitted contact with a person known for being involved in illegal drug activity. Additionally, the search of Robinson's socks occurred after marijuana had been found in the vehicle and after the officer had noticed " 'a large bulge on the inside of [Robinson's] right sock .' " (Alteration sic.) *Id.* at ¶ 31. Because the Ninth District Court of Appeals did not consider all of the circumstances in its determination of probable cause,[3] we decline to follow its holding in the instant case. Additionally, we note that the case is distinguishable because it did not involve any tips from a confidential informant. Similarly, we do not find applicable the holding of the Eleventh District Court of Appeals in *McCorvey*, *supra*, where the court held that due to unreliability of an unverified tip from an anonymous informant, probable cause was lacking to search the defendant upon a canine alert.

**{¶38}** We hold that under the totality of the circumstances present in this case, the finding of probable cause was sufficiently supported by multiple factors, including a detailed tip from a reliable confidential informant, who had supplied

---

[3] It appears that the totality-of-the-circumstances analysis was used to review justification for the *Terry*-type search and voluntariness of the search, but not for the probable cause analysis. *See id.* at ¶ 16-17, 29.

accurate information in the past. The tip was corroborated with respect to Urdiales by the surveillance and observations on the scene. The K-9 alert served as an additional factor to support the finding of probable cause.

{¶39} Urdiales does not challenge the trial court's finding of exigency. Accordingly, we hold that because the State sufficiently established an exception for the warrantless search of Urdiales's person, the trial court did not err in denying the motion to suppress for allegations of unconstitutional search. The third assignment of error is overruled.

### Conclusion

{¶40} Having reviewed the arguments, the briefs, and the record in this case, we find no error prejudicial to Appellant in the particulars assigned and argued. The judgment of the Common Pleas Court of Henry County, Ohio, is therefore affirmed.

*Judgment Affirmed*

**ROGERS, P.J. and PRESTON, J., concur.**

**/hlo**